UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JEALENA MAXWELL,

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

No. 2:25-cv-01177-CKD

ORDER

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying applications for Disability Income Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("Act"), respectively. The parties have consented to magistrate judge jurisdiction. For the reasons discussed below, the court will deny plaintiff's motion for summary judgment and grant the Commissioner's cross-motion for summary judgment.

BACKGROUND

Plaintiff, born in 1965, applied for DIB and SSI on June 26, 2017 alleging disability beginning August 8, 2014. Administrative Transcript ("AT") 827, 844. Plaintiff claimed she was disabled due to PTSD, major depressive disorder, rheumatoid arthritis, lupus, Raynaud's disease, degenerative arthritis, and severe allergies. AT 93-94. In a later application, plaintiff was found to

be disabled as of May 23, 2020, the date she reached age 55. AT 827. Thus, the relevant time period for the ALJ's decision is from August 8, 2014 through May 22, 2020. AT 845, 858. At a November 15, 2022 hearing on her claim, plaintiff testified that, prior to May 2020, in the years after her son's death, she suffered from PTSD, anxiety, depression, panic, and racing thoughts. AT 861-863. She also had autoimmune problems, body pain, weakness, degenerative problems with her neck, and arthritis. AT 864-865. On April 5, 2023, an Administrative Law Judge (ALJ) issued a decision finding plaintiff not disabled during the period at issue. AT 824-852. The ALJ made the following findings (citations to 20 C.F.R. omitted):

> 1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2020.
>
> 2. The claimant has not engaged in substantial gainful activity since August 8, 2014, the alleged onset date.
>
> 3. The claimant has the following severe impairments: mood disorder, cannabis abuse disorder, anxiety disorder, and arthritis.
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> 5. After careful consideration of the entire record, the claimant has had the residual functional capacity to perform light work except that she can frequently climb, stoop, kneel, crouch, and crawl; can perform simple, routine, and repetitive tasks; and can work in low stress environments defined as requiring occasional decision making, occasional changes in the work setting, and occasional public interaction.
>
> 6. The claimant is unable to perform past relevant work.[1]
>
> 7. The claimant was born [in 1965] and was 49 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.
>
> 8. The claimant has at least a high-school education.
>
> 9. Transferability of job skills is not material to the determination of disability[.]
>
> 10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

---

[1] Plaintiff previously worked as a cashier and waitress. AT 843.

> 11. The claimant has not been under a disability, as defined in the Social Security Act, from August 8, 2014 through May 22, 2020.

AT 830-845.

ISSUES PRESENTED

Plaintiff argues that the ALJ committed the following errors in finding plaintiff not disabled: (1) the ALJ erred at step two of the sequential evaluation; (2) the ALJ erroneously discounted the medical opinions of two physicians; (3) the ALJ failed to consider the combined impact of plaintiff's impairments; and (4) the ALJ erred in discounting plaintiff's subjective symptom testimony.

LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's conclusion weighed. See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in

weighing the evidence. See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

ANALYSIS

A. Step Two

Plaintiff argues that the ALJ erred at step two of the sequential evaluation by failing to properly consider the impact of all her medically determinable impairments, including lupus, fibromyalgia, rheumatoid arthritis (RA), and panic disorder. Plaintiff argues that this was harmful error because these impairments were not considered in the RFC determination, such that the RFC was not supported by substantial evidence.

An impairment, or combination of impairments, can be found non-severe if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work. See SSR 85–28, 1985 WL 56856 (Jan. 1, 1985); see also Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988) (adopting SSR 85–28). "The mere existence of an impairment is insufficient proof of a disability." Matthews v. Shalala, 10 F.3d 678, 680 (9th Cir. 1993). A claimant bears the burden of proving that an impairment is disabling. Id. (citation omitted).

"Step two is merely a threshold determination meant to screen out weak claims." Buck v. Berryhill, 869 F.3d 1040, 1048 (9th Cir. 2017), citing Bowen v. Yuckert, 482 U.S. 137, 146–47 (1987). "It is not meant to identify the impairments that should be taken into account when determining the RFC .... The RFC ... *should* be exactly the same regardless of whether certain impairments are considered 'severe' or not." Id. (emphasis in original). Any error in failing to include an impairment at step two is harmless if the ALJ considered any limitations imposed by the impairment in subsequent steps of the sequential evaluation. Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007) ("The decision reflects that the ALJ considered any limitations posed by the bursitis at Step 4. As such, any error that the ALJ made in failing to include the bursitis at Step 2 was harmless."); Morrison v. O'Malley, 2024 WL 21558, at *6 (E.D. Cal. Jan. 2, 2024) (explaining failure to include an impairment in the step two analysis is harmless if the ALJ considers all plaintiff's alleged symptoms in subsequent steps of evaluation). "In contrast, an error is not harmless at step two and requires remand, where the ALJ has not factored in all of Plaintiff's impairments in subsequent steps." Alberto C. v. O'Malley, 2024 WL 449248, at *4

(S.D. Cal. Feb. 6, 2024) (citing Buck, 869 F.3d at 1049 and Ormberg v. Astrue, 254 F. App'x 589, 590-91 (9th Cir. 2007)).

At step two, the ALJ found "arthritis" to be a severe impairment, along with mood disorder, cannabis abuse disorder, and anxiety disorder. The ALJ considered evidence of Raynaud's syndrome and found it nonsevere. AT 830. The ALJ also considered evidence of lupus, noting a normal lymph examination in May 2016 and a June 2016 treatment note that there was "no proof of actual lupus," among other evidence, and found that plaintiff failed to show lupus was a medically determinable impairment. AT 831. The ALJ did not address fibromyalgia, RA, or panic disorder at step two.

Plaintiff points out that she was treated by rheumatologists at both ends of the relevant time period (August 2014 through May 2020) and received alternate, combined, or provisional diagnoses of RA, lupus, fibromyalgia, and Raynaud's disease. Plaintiff asserts that her rheumatic disorders were severe, disabling impairments. Defendant argues that any step two error as to these alleged impairments was harmless, because the ALJ considered all plaintiff's impairments, including her overall physical and mental abilities, when crafting the RFC.

After step two, the ALJ considered records "from the alleged onset date through 2015" that showed "some . . . tenderness to palpation on trigger points" on lumbar, SI joints, and cervical spine, but "generally . . . no motor weakness and no sensory deficit." AT 836. The ALJ noted plaintiff's reports of "some rheumatology symptoms" in December 2014, but found a "general absence of significant and consistent musculoskeletal or neurological findings" during that period. AT 836. The ALJ further noted that, in January 2019, plaintiff was "not on any rheumatology medications[.]" AT 837; see also 838 (noting normal physical exam findings). The ALJ also considered the opinion of a consulative examiner who opined that plaintiff should avoid cold environments due to Raynaud's disease; the ALJ found this aspect of the opinion unsupported by the record. AT 842. The ALJ considered the opinions of treating rheumatologists Dr. Michael Powell and Dr. Anupam Chahal, the subject of a separate claim. The ALJ also considered numerous objective findings as to physical limitations, finding "generally intact musculoskeletal and neurological functioning." AT 837-838. Additionally, the ALJ noted

plaintiff's 2014 reports of panic attacks and detailed evidence concerning mental health and associated functional limitations. AT 833-834, 839.

Because the ALJ considered any limitations posed by rheumatic disorders and panic attacks in formulating the RFC, plaintiff has not shown harmful error at step two. See Stout v. Commissioner, 454 F.3d 1050, 1055 (9th Cir. 2006) (error is harmless if "inconsequential to the ultimate nondisability determination").

B. Medical Opinions

Plaintiff claims the ALJ erred in discounting the opinions of two treating rheumatologists, Dr. Powell and Dr. Chahal. The court considers these in turn.

1. Dr. Powell

Dr. Powell began treating plaintiff in December 2014; he saw her again in January 2015 and July 2015. AT 467, 469, 471. At various times during treatment, Dr. Powell noted a number of fibromyalgia (FM) trigger points, prescribed medication for nerve pain, determined plaintiff was immunocompromised, recommended over-the-counter medication, adjusted her medications, diagnosed her with tennis elbow, and prescribed an anti-rheumatic drug.

On July 20, 2015, Dr. Powell wrote a short note opining in relevant part that plaintiff was unable to lift more than two pounds for three months. AT 417. The ALJ discussed this opinion as follows:

> The claimant's treating provider, Dr. Michael Powell, opined in July 2015 that she could not lift greater than 2 pounds for 3 months. I find that this is unpersuasive as it is not adequately supported or consistent with the record as described above. Further, Dr. Powell did not provide any explanation to explain the limitations and his findings did not support his opinion. The claimant generally had a normal gait, normal sensation, and normal strength.

AT 843.

"The ALJ is responsible for translating and incorporating clinical findings into a succinct RFC." Rounds v. Comm'r Soc. Sec. Admin., 807 F.3d 996, 1006 (9th Cir. 2015). In doing so, the ALJ must articulate a "substantive basis" for rejecting a medical opinion or crediting one medical opinion over another. Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014); see also Marsh v. Colvin, 792 F.3d 1170, 1172-73 (9th Cir. 2015) ("an ALJ cannot in its decision totally

ignore a treating doctor and his or her notes, without even mentioning them").

The applicable rules provide that adjudicators for the Social Security Administration, including ALJs, evaluate medical opinions according to the following factors: supportability; consistency; relationship with the claimant; specialization; and other factors such as the medical source's familiarity with other evidence in the record or with disability program requirements. 20 C.F.R. § 416.920c(c)(1)-(5). The most important of these factors are supportability and consistency. 20 C.F.R. § 416.920c(b)(2). Supportability is the extent to which an opinion or finding is supported by relevant objective medical evidence and the medical source's supporting explanations. 20 C.F.R. § 416.920c(c)(1). Consistency is the extent to which an opinion or finding is consistent with evidence from other medical sources and non-medical sources, including the claimants themselves. 20 C.F.R. §§ 416.920c(c)(2), 416.902(j)(1). The ALJ will articulate how he considered the most important factors of supportability and consistency, but an explanation for the remaining factors is not required except when deciding among differing yet equally persuasive opinions or findings on the same issue. 20 C.F.R. § 416.920c(b). The new regulations "still require that the ALJ provide a coherent explanation of his reasoning" and establish "a minimum level of articulation to be provided in determinations and decisions, in order to provide sufficient rationale for a reviewing adjudicator or court." Sam-Chankhiao v. Kijakazi, 2:20-cv-0186 DB, 2022 WL 4226170, at *3 (E.D. Cal. Sept. 13, 2022), citing Hardy v. Commissioner, 554 F.Supp.3d 900, 906 (E.D. Mich. 2021).

Here, the ALJ found Dr. Powell's opined functional limitation (an inability to lift more than two pounds) unsupported by his treatment notes and findings. The ALJ also found this opined limitation inconsistent with findings of normal gait, normal sensation, and normal strength. Plaintiff argues that the ALJ should have considered that Dr. Powell was a rheumatologist in evaluating his opinion. The ALJ "*may, but [is] not required to*" consider additional factors like specialization when deciding among differing yet equally persuasive opinions or findings on the same issue. Woods v. Kijakazi, 32 F.4th 785, 792 (9th Cir. 2022) (emphasis in original) (quoting § 404.1520c(b)(3)). As the ALJ did not find Dr. Powell's opinion "equally persuasive" to other opinions in the record on plaintiff's ability to lift weight, such as the

State agency reviewer who opined plaintiff could perform light work, the ALJ's analysis did not go beyond the supportability and consistency factors. This is permissible. Moreover, plaintiff's limitation on lifting for three months does not substantially affect the determination of disability, which requires impairments of at least 12 months' duration. Plaintiff has not shown error as to Dr. Powell.

2. Dr. Chahal

Plaintiff began seeing Dr. Chahal in 2019 for rheumatoid and lupus symptoms. AT 1092. In November 2019, Dr. Chahal ordered lab tests that revealed a positive ANA screen and high rheumatoid factor, among other abnormalities. AT 1024-1029.

On November 14, 2022, Dr. Chahal filled out a one-page questionnaire in which he opined that plaintiff was precluded from full-time work at any exertional level, including sedentary, and could only lift up to three pounds. AT 1032. Dr. Chahal listed plaintiff's impairments as "joint pain, swelling, stiffness with limited range of motion and grip strength, fatigue, muscle pain, [and] muscle weakness." AT 1032. He indicated that his opinion was based on the following objective findings: "exam demonstrated joint swelling, limited ROM and grip strength was decreased." AT 1032. He opined that plaintiff could sit for two hours at a time and three hours over an 8-hour period. AT 1032. He further opined that she could stand and/or walk for one hour in an 8-hour period, explaining: "Patient must lie down and rest joints due to severe pain and increasing swelling of joints." AT 1032. Dr. Chanal opined that plaintiff had been disabled since December 11, 2019. AT 1032.

The ALJ discussed this opinion as follows:

> As to the opinion of Anupam Chahal, I note that it opines as to issue reserved for the Commissioner, is unsupported, and is inconsistent with the record as a whole. Indeed, this provider indicated that the claimant had significant limitations since December 11, 2019, however the record does not support these limitations either with Dr. Chahal's treatment notes (the record contains none), or the objective evidence elsewhere in the record (*see* record). It bears noting that this provider did not respond to the call of the questions and instead of identifying "any impairments," merely listed the claimant's reported symptoms, which could have been done without an examination. Still further, there is no explanation as to why the claimant would be limited to sitting only 2 hours at one time or 3 hours over an 8-hour period. Still further, this opinion is not consistent with the negative

imaging of the claimant's hands and wrists in 2019 (*see* discussion above).

As to supportability, the ALJ found that neither Dr. Chanal's treatment notes (which were not part of the record) nor other objective evidence supported the two- or three-hour limitation on sitting. The ALJ found the opined limitations on lifting unsupported by 2019 imaging of the bilateral hands and wrists, which showed "no evidence of inflammatory arthropathy or acute osseous abnormality." AT 828 (record citation omitted). Plaintiff argues that the ALJ should have considered whether the lab tests Dr. Chahal ordered in 2019 were consistent with his opinion. However, the ALJ was not required to discuss Dr. Chahal's lab tests specifically, and he sufficiently analyzed the supportability factor.

As to consistency, the ALJ found the opined limitations inconsistent with "the record as a whole," which, the ALJ noted in the prior paragraph, included evidence of normal gait, normal sensation, and normal strength. In an earlier summary of record evidence, the ALJ found "a lack of consistent and significant musculoskeletal and neurological abnormalities" and "a normal range of motion and full strength in the wrists, elbows, shoulders, hips, knees, and ankles and her grip strength was essentially normal." AT 837, 838. As above, the ALJ was not required to consider the factor of specialization, though he could have done so had he found Dr. Chahal's opinion "equally persuasive" to another opinion on physical abilities. Plaintiff has not shown error as to Dr. Chahal.

C. <u>Combined Impact of Impairments</u>

Plaintiff argues that the ALJ failed to consider the combined impact of her impairments, including fibromyalgia, RA, and various other physical and mental impairments. <u>See</u> 20 C.F.R. § 404.1523(c).

RFC is assessed based on the relevant evidence in the case record, including the medical history, medical source statements, and subjective descriptions and observations made by the claimant, family, neighbors, friends, or other persons. 20 C.F.R. §§ 404.1545(a)(1), 404.1545(a)(3). When assessing RFC, the ALJ must consider the claimant's "ability to meet the physical, mental, sensory, and other requirements of work[.]" 20 C.F.R. §§ 404.1545(a)(4).

Here, the ALJ based his RFC finding on a detailed discussion of the medical evidence of physical and mental impairment. AT 836-838. He outlined plaintiff's medical history from October 2014 to April 2020. AT 839-940. The ALJ wrote that, in making the RFC finding, he had "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence" pursuant to agency regulations. AT 835. The ALJ reviewed six medical opinions on plaintiff's mental and physical functionality, finding persuasive those that found her capable of light work and rejecting multiple opinions finding her capable of medium work. The ALJ sufficiently considered the combined impact of plaintiff's impairments such that the RFC was grounded in substantial evidence, and plaintiff has not shown error on this basis.

D. Credibility

Lastly, plaintiff argues that the ALJ erred in not finding her statements about her subjective symptoms fully credible.

The ALJ summarized plaintiff's hearing testimony as follows:

> At the hearing, the claimant described her impairments as causing 'constant' pain and swelling throughout. She reported that pain and swelling limited her in reaching and use of her hands, such that she could only use her hands for 20 minutes at a time. She claimed that she can only lift and carry up to 5 pounds. She claimed that she could walk down the driveway before needing to rest and that she could stand for 2 hours total in a day, changing positions every 20 minutes. She reported that she became emotional and cried every day, affecting her relationships with others. She reported being most comfortable lying down and that this improved all her pain symptoms.

AT 835-836; see AT 860-867 (hearing testimony).

The ALJ determined that "the record supports . . . some functional limitations, but does not demonstrate the degree of abnormality the claimant has alleged." AT 836. The ALJ found plaintiff to have "some deficits" that are "relatively minor in nature," inconsistent with her symptom allegations. AT 838. In support, he cited the longitudinal examination findings, imaging studies, and medical test results; "observations of the claimant exhibiting no distress consistently"; her "relatively conservative treatment"; and her activities of daily living.

The ALJ determines whether a disability applicant is credible, and the court defers to the

ALJ's discretion if the ALJ used the proper process and provided proper reasons. See, e.g., Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995). If credibility is critical, the ALJ must make an explicit credibility finding. Albalos v. Sullivan, 907 F.2d 871, 873-74 (9th Cir. 1990). "Without affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999); see also Lambert v. Saul, 980 F.3d 1266, 1277–78 (9th Cir. 2020).

In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors. Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc). If there is objective medical evidence of an impairment, the ALJ then may consider the nature of the symptoms alleged, including aggravating factors, medication, treatment and functional restrictions. See id. at 345-47. The ALJ also may consider: (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and (3) the applicant's daily activities. Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996). Work records, physician and third party testimony about nature, severity and effect of symptoms, and inconsistencies between testimony and conduct also may be relevant. Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir. 1997). A failure to seek treatment for an allegedly debilitating medical problem may be a valid consideration by the ALJ in determining whether the alleged associated pain is not a significant nonexertional impairment. See Flaten v. Secretary of HHS, 44 F.3d 1453, 1464 (9th Cir. 1995).

When discounting subjective testimony, an ALJ must provide "specific, clear, and convincing *reasons* for doing so." Wade v. Saul, 850 F. App'x 568, 569 (9th Cir. 2021) (emphasis in original), citing Lambert, 980 F.3d at 1277–78. This standard does "not require ALJs to perform a line-by-line exegesis of the claimant's testimony[.]" Lambert, 980 F.3d at 1277. However, an ALJ's detailed overview of the claimant's medical history—coupled with a nonspecific boilerplate conclusion that her testimony is "not entirely consistent" with her medical treatment—is not enough to satisfy the minimal requirements for assessing credibility. Id. at 1277–78.

Here, the ALJ determined that mood disorder, cannabis abuse disorder, anxiety disorder, and arthritis were severe impairments. As to objective clinical findings, the ALJ summarized the longitudinal medical evidence of physical and mental impairment, including exam findings, imaging, medication, and treatment. "Considering the entire record," the ALJ noted a "lack of consistent and significant musculoskeletal and neurological abnormalities" and "generally normal" physical examination findings. AT 838. As to mental functioning, the ALJ found that the record of "objective findings and observations during examinations are inconsistent with the allegations" beyond the mental limitations reflected in the RFC. AT 839. Plaintiff had "generally normal mental status examinations" with some exceptions. AT 839. "Taken as a whole, the record documents little in the way of continuous and significant abnormalities related to the claimant's mental functioning." AT 840.

The ALJ also considered plaintiff's activities of daily living. These included

> preparing meals for herself and her husband for up to 2 hours at a time, performing chores requiring good use of upper extremities, going out alone, driving a vehicle, managing money, shopping in stores for hours at a time, going to church and elsewhere without accompaniment, and engaging in hobbies that require good use of the hands, such as painting and sewing.

AT 841. The ALJ explained why plaintiff's daily activities "suggest generally intact day-to-day functioning and are inconsistent with the degree of limitation . . . alleged." AT 841.

Finally, the ALJ found that the record did not reflect the "course of medical treatment one would expect for an individual with the claimant's alleged loss of function." AT 841. In January 2019, she was "not on any rheumatology medications." AT 837. "She generally just received medication for her conditions," which the ALJ characterized as "relatively conservative treatment." AT 838. The ALJ noted that plaintiff was not hospitalized due to mental functioning and did not receive significant treatment for mental issues. AT 840. In May 2016, plaintiff reported feeling "much better" on her current medication regimen, and the ALJ found that treatment had been "generally effective" in controlling her symptoms. AT 838, 839.

Because the ALJ used the proper process and provided proper reasons, the court defers to

the ALJ's credibility determination.

CONCLUSION

For the reasons stated herein, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 9) is denied;

2. The Commissioner's cross-motion for summary judgment (ECF No. 17) is granted; and

3. Judgment is entered for the Commissioner.

Dated: September 24, 2026

CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

2/maxw1177.bothdibssi.ckd